**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Jeffrey L. BERRY, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 9, 2004.

Filed June 13, 2005.

Craig P. Miller, Lock Haven, for appellant.

Ted Mcknight, Assistant District Attorney, Lock Haven, for Commonwealth, appellee.

Before: FORD ELLIOTT, JOYCE, STEVENS, MUSMANNO, LALLY–GREEN, TODD, KLEIN, BENDER and BOWES, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Jeffrey L. Berry, appeals from the order dated March 20, 2003, denying his first petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546. We affirm.

¶ 2 The procedural history of the case is as follows. Appellant was charged with one count of driving under the influence, and one count of driving while operating privileges are suspended or revoked. On September 12, 2002, the court held a plea colloquy. During this colloquy, Appellant expressed his desire to proceed *pro se.* The court allowed Appellant to do so. The court then stated that the parties had reached a plea arrangement. Specifically, in exchange for Appellant's guilty pleas, the district attorney would recommend that Appellant's sentences be served concurrently. The court advised Appellant that the court was not bound by the terms of the plea arrangement. The court also told Appellant that if the court did not abide by the arrangement, Appellant would be entitled to withdraw his pleas. Appellant affirmed his understanding of these statements and entered his guilty pleas.

¶ 3 On October 21, 2002, the court held a sentencing hearing. Again, Appellant proceeded *pro se.* The court rejected the

Commonwealth's sentencing recommendation and imposed consecutive sentences. Specifically, the court imposed a mandatory prison term of 90 days for driving under suspension, consecutive to a prison term of nine to 23 months for DUI. The court did not inform Appellant that he could withdraw his plea. Appellant stated that he wanted to challenge the sentence. The court told Appellant that he should fill out a form at the county jail to obtain a Public Defender. The record reflects that Appellant did not file any post-sentence motions, and did not file a direct appeal.

¶ 4 On January 8, 2003, Appellant filed a timely PCRA petition. The PCRA court appointed counsel for Appellant. Counsel filed an amended petition. In that petition, Appellant argued that his sentence was illegal. Specifically, Appellant argued that the trial court violated the plea agreement by imposing consecutive sentences and by not allowing Appellant to withdraw his plea. Appellant further argued that he should be able to withdraw his guilty plea and proceed to trial. The PCRA court held a hearing on March 19, 2003. The court denied the petition the next day, on March 20, 2003. This appeal followed.

¶ 5 Appellant raises two issues on appeal:

1. Did the lower court err in not permitting the defendant to withdraw his guilty plea?

2. Did defendant waive his right to contest the sentence by not filing a direct appeal?

Appellant's Brief at 4.

¶ 6 Our standard of review for an order denying PCRA relief is whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. *Commonwealth v. Allen*, 557 Pa. 135, 732 A.2d 582, 586 (1999).

 ¶ 7 We will address Appellant's second issue first. Appellant argues that his failure to file a direct appeal did not operate as a waiver of his sentencing claim, because challenges to the legality of a sentence are never waived. To be entitled to PCRA relief, a petitioner must plead and prove, *inter alia,* that the allegation of error has not been previously litigated or waived. 42 Pa.C.S.A. § 9543(a)(3). An issue is waived if it could have been raised prior to the filing of the PCRA petition, but was not. 42 Pa.C.S.A. § 9544(b).

¶ 8 The record reflects that Appellant did not move to withdraw his plea, did not file post-sentence motions, and did not file a direct appeal. Instead, he filed a petition under the PCRA. Here, for the first time, Appellant requested that he be allowed to withdraw his guilty pleas. Since Appellant failed to raise this claim in the trial court or on direct appeal, this issue is waived unless an exception to the waiver rule applies.

 ¶ 9 One well-established exception is that challenges to the legality of the sentence are never waived. This means that a court may entertain a challenge to the legality of the sentence so long as the court has jurisdiction to hear the claim. In the PCRA context, jurisdiction is tied to the filing of a timely PCRA petition. *See, Commonwealth v. Voss*, 838 A.2d 795, 800 (Pa.Super.2003). Because Appellant filed a timely PCRA petition and no other jurisdictional hurdles exist, we must now determine whether Appellant truly challenges the legality of the sentence.

¶ 10 Our Supreme Court has stated that "an illegal sentence is one that exceeds the statutory limits." *Commonwealth v. Bradley*, 575 Pa. 141, 834 A.2d 1127, 1131 (2003). In *Commonwealth v. Lipinski*, 841 A.2d 537 (Pa.Super.2004), this Court

recognized a broader definition of an illegal sentence: "if no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction." *Id.* at 539.

■ ¶ 11 The broader definition applies to Appellant's case. Thus, a sentence is illegal where a statute bars the court from imposing that sentence. *See, e.g., Commonwealth v. Archer,* 722 A.2d 203, 209 (Pa.Super.1998) (*en banc*); *Commonwealth v. Mariani,* 2005 PA Super 25, 869 A.2d 484 (failure to advise the defendant of the amount and method of restitution at the time of sentencing results in an illegal sentence); *Commonwealth v. Edrington,* 780 A.2d 721, 723 (Pa.Super.2001) (failure to impose a mandatory minimum sentence results in an illegal sentence).

■ ¶ 12 The *Archer* Court also recognized one non-statutory example of an illegal sentence: namely, a claim that sentences should merge. *Archer,* 722 A.2d at 209; *see also, Commonwealth v. Walker,* 468 Pa. 323, 362 A.2d 227 (1976); *Commonwealth v. Norris,* 498 Pa. 308, 446 A.2d 246, 251 n. 9 (1982); *Commonwealth v. Campbell,* 351 Pa.Super. 56, 505 A.2d 262 (1986) (*en banc*). This particular exception is based on longstanding Supreme Court precedent regarding double jeopardy. *Walker.*

■ ¶ 13 Thus, our case law draws a careful distinction between truly "illegal" sentences, and sentences which may have been the product of some type of legal error. *Archer,* 722 A.2d at 209. *Archer* and its progeny have established that the term "illegal sentence" is a term of art that our Courts apply narrowly, to a relatively small class of cases. *See, Commonwealth v. Ernest Williams,* 787 A.2d 1085, 1087 (Pa.Super.2001) (a claim that the sentencing court relied on an unconstitutional statute does not implicate the legality of the sentence, and is therefore waivable).

■ ¶ 14 Appellant cites *Commonwealth v. Anthony Williams,* 442 Pa.Super. 590, 660 A.2d 614 (1995), for the proposition that Appellant's sentence is illegal. We disagree because *Williams* does not control the instant case. *Williams* involved a second PCRA petition that was filed before the 1995 amendments. The defendant claimed, *inter alia,* that he did not receive the sentence he was promised. *Id.* at 619. The *Williams* Court held that under the law as it existed at that time, this claim would be waived unless it: (1) implicated the defendant's innocence; (2) raised the possibility of a miscarriage of justice; or (3) implicated the legality of the sentence. *Id.* at 618. Ultimately, this Court held that "it would be a miscarriage of justice for a person to relinquish cherished constitutional rights based on a promise that was not kept." *Id.* at 619 (emphasis added). Thus, the *Williams* Court's opinion turned on the second scenario (miscarriage of justice), not the third scenario (illegal sentence). Unfortunately, our Courts do not recognize the prospect of a miscarriage of justice as a general basis for excusing waiver under the 1995 amendments. *See, Commonwealth v. Judge,* 568 Pa. 377, 797 A.2d 250, 260 (2002) ("there is no injustice in refusing to allow Appellant to revive on collateral review claims that he waived during his direct appeal."). Rather, the miscarriage of justice standard now acts as an additional hurdle when the petitioner files a second, timely PCRA petition. *See, Commonwealth v. Fahy,* 558 Pa. 313, 737 A.2d 214, 223 (1999).

¶ 15 We do note that *Commonwealth v. Anderson,* 434 Pa.Super. 309, 643 A.2d 109, 111–112 (1994), and its progeny stand for the proposition that where the trial court fails to comply with the terms of a

plea agreement, that sentence is illegal. *Anderson* announced this proposition of law in a footnote, apparently in order to address the underlying sentencing claim rather than the defendant's assertion of ineffectiveness. *Id.* at 112 & n. 6. Moreover, the *Anderson* rule was based on Pa.R.Crim.P. 319 (now Pa.R.Crim.P. 590). At the time, the relevant part of Rule 319 read as follows:

> If the judge is satisfied that the plea is understandingly and voluntarily entered, he may accept the plea. If thereafter the judge decides not to concur in the plea agreement, he shall permit the defendant to withdraw his plea.

Pa.R.Crim.P. 319(b)(3) (emphasis added).

¶ 16 In 1995, Rule 319(b)(3) was repealed. The provision above, requiring the court to permit the defendant to withdraw the plea, "was deleted to eliminate the confusion being generated when that provision was read in conjunction with Rule 591. As provided in Rule 591, it is a matter of judicial discretion and case law whether to permit or direct a guilty plea or plea of *nolo contendere* to be withdrawn." Rule 590, Official Comment. Consequently, *Anderson* does not control Appellant's case.[1]

¶ 17 Thus, current case law does not support the proposition that Appellant's claim is a non-waivable challenge to the legality of the sentence. Appellant does not identify any statutory basis or double jeopardy basis for declaring that his sentence is illegal. Further, we decline to expand the definition of "illegal sentence" to encompass claims of this type, because there is simply no principled basis for doing so.

¶ 18 If Appellant's claim does not implicate the legality of the sentence, it is waived. *Commonwealth v. Rush,* 576 Pa. 3, 838 A.2d 651, 656 (2003); 42 Pa.C.S.A. § 9545(b). Here, Appellant waived his claim by failing to file a direct appeal. Moreover, he did not allege ineffectiveness of counsel for failure to raise this claim on direct appeal. Therefore, the issue is waived.

¶ 19 Even if the issue were not waived, Appellant would not be entitled to relief. Our reasoning follows.

■ ¶ 20 Based on the plain language of the plea colloquy, the instant case involved a plea agreement. Specifically, the parties made an "agreement to make a favorable but non-binding recommendation" for concurrent sentences. *Commonwealth v. Porreca,* 389 Pa.Super. 553, 567 A.2d 1044, 1047 (1989), *reversed on other grounds,* 528 Pa. 46, 595 A.2d 23 (1991). In *Porreca,* the court clearly informed the defendant that he could not withdraw his plea if the court chose not to abide by the recommendation. Here, in contrast, the court clearly informed Appellant that he could withdraw his plea if the court chose consecutive sentences. In both cases, the agreement was enforceable because "the limits of the agreement are plainly set forth on the record, understood and agreed to by the parties, and approved by the trial court." *Id.*

¶ 21 At sentencing, the prosecutor honored his end of the bargain by recommending concurrent sentences. However, because of Appellant's numerous prior convictions for driving under the influence, his high blood alcohol content, and his repeated failures while on parole, the court did not abide by the district attorney's

---

1. We also note that quite recently, our Supreme Court effectively overruled *Anderson's* pronouncement that when parties enter into a negotiated plea for concurrent sentences, the trial court may not later impose consecutive sentences after a probation revocation proceeding. *Commonwealth v. Wallace,* 870 A.2d 838 (Pa.2005).

recommendation. Instead, the court imposed consecutive sentences. *See*, PCRA Court Order, 3/20/2003, at 2. The court was entitled to do so under the terms of the agreement. *Commonwealth v. McClendon*, 403 Pa.Super. 467, 589 A.2d 706, 710 (1991) (*en banc* ).[2]

¶ 22 Similarly, under the terms set out by the trial court, Appellant was entitled to petition to withdraw his guilty plea. Appellant certainly could have done so by filing a petition with the trial court. *Commonwealth v. Watson*, 835 A.2d 786, 791 (Pa.Super.2003). Unfortunately, he did not do so.

■ ¶ 23 Appellant argues that the trial court "failed to allow him to [withdraw his plea]." Appellant's Brief at 10. Appellant overstates the case. While the trial court failed to remind Appellant that he could withdraw his plea, this is not the same as "failing" to allow Appellant to withdraw his plea. Rather, it remained Appellant's responsibility to move to withdraw his plea, if he so desired. *Watson.* Because Appellant did not move to withdraw his plea, it cannot be fairly said that the court erred in any way.

¶ 24 Before concluding, we note the following. Some of our esteemed colleagues have expressed their concern that Appellant may not have voluntarily waived his right to counsel during the plea colloquy. We decline to address this issue because it is waived on several grounds.

■ ¶ 25 First, issues which are not raised in the PCRA court are waived on appeal. Pa.R.A.P. 302(a); Pa.R.Crim.P. 907(B). Appellant did not raise this issue in the PCRA court; thus, it is waived.

■ ¶ 26 Second, issues which are not raised in a Concise Statement of Matters Complained of on Appeal under Pa.R.A.P. 1925 are waived on appeal. *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998). Appellant did not raise any issues relating to his right to counsel in his Concise Statement. Thus, this claim is waived.

■ ¶ 27 Finally, issues that are not supported by citations to the record and to pertinent legal authority are waived. *Commonwealth v. Kopicz*, 840 A.2d 342 (Pa.Super.2003); Pa.R.A.P. 2119. Appellant now has counsel for the instant PCRA appeal. In this counseled appeal, Appellant has failed to develop any meaningful argument relating to whether Appellant knowingly and voluntarily waived his right to counsel during the plea colloquy or the sentencing hearing. Thus, this claim is waived.

¶ 28 Order affirmed.

¶ 29 KLEIN, J.: files Dissenting Opinion joined by Judges MUSMANNO, BENDER and BOWES.

DISSENTING OPINION BY KLEIN, J.:

¶ 1 I respectfully disagree with the decision reached by the majority in this case, and therefore must dissent. Frankly, I find it difficult to digest today's disposition given the substantial judicial errors plaguing this case. I am unwilling to turn a blind eye to the significant mistakes in this

---

**2.** In *McClendon*, this Court held that where a trial court is not bound by a sentencing recommendation, the defendant does not have the automatic right to withdraw his plea simply because the court sentences the defendant more harshly than the recommendation would call for. *McClendon*, 589 A.2d at 710.

This was true even in 1991, when the seemingly mandatory language of Pa.R.Crim.P. 319(b)(3) (discussed *supra* ) was in effect. Thus, Appellant was entitled to have his plea withdrawn as a matter of right only as a result of the express language to this effect, which was stated in open court.

case, which not only impacted the *pro se* litigant's decision-making process, but also helped pave the way to waiver, the very vehicle through which the majority tenuously bases its decision. This case reeks of unfairness, and I cannot conclude in good conscience that Berry was afforded the process due him and every individual in our land, as guaranteed by our State and Federal Constitutions.

¶ 2 Berry was charged with DUI and driving while operating privileges were suspended or revoked. On September 12, 2002, prior to his entry of a guilty plea, Berry told the judge that he would proceed without counsel. However, the waiver of counsel was accepted without a valid colloquy, as the trial judge failed to ascertain, *inter alia*, whether Berry knew the maximum range of sentences he faced before he waived his right to counsel, and failed to outline the dangers of proceeding without representation.

¶ 3 Proceeding *pro se*, Berry entered a guilty plea to both charges. During the plea proceeding, the trial judge stated on the record that if he would decline the District Attorney's recommendation of concurrent sentences, he would allow Berry to withdraw his guilty plea and proceed to trial. (N.T. Guilty Plea, 9/12/02, at 6).

¶ 4 However, at the sentencing hearing, where Berry again appeared *pro se*, the trial judge imposed *consecutive* sentences, after noting that "the Commonwealth has agreed to recommend that your sentences run concurrent." (N.T. Sentencing, 10/21/02, at 3). It is possible the judge forgot that he had told Berry he could withdraw his plea and go to trial if the judge chose to make the sentences consecutive. In any event, Berry stated that he wanted to appeal the sentence, and the trial judge advised him to fill out the form at the county jail to get a Public Defender, though no such appeal was ever filed. The trial judge only told Berry he had a right to *appeal*—he did not tell him he had a right *to withdraw his guilty plea* and go to trial.

¶ 5 At the PCRA hearing, where Berry finally was represented, the trial judge again noted, "And in reading the colloquy from [the guilty plea proceeding], it appears that a visceral reading of it would be that the Court accepted the offer as a plea agreement." (N.T. PCRA Hearing, 3/19/03, at 2). However, the trial judge claimed that he had made a mistake and that there was no plea agreement. (*Id.* at 4–5). Berry's counsel stated that Berry was informed both at the preliminary hearing stage and in conversations with the District Attorney's Office that he had in fact made a plea agreement. However, the trial judge said he had no record of that and did not permit further testimony. (*Id.* at 5).

¶ 6 I disagree with the majority's conclusions that Berry received a "legal" sentence and, therefore, waived his claim. While the sentence is—as the majority reasons—*numerically* legal since it falls within the statutory maximum, it can hardly be said that the sentence, wrought by defective waiver colloquies and judicial error, is constitutionally legal. I cannot partake in the charade of denying relief that Due Process guarantees, on the semantic basis that a sentence is illegal only where it exceeds the statutory maximum.

¶ 7 A sentence woven from unconstitutional fabric, in this case entered in violation of a plea agreement and rules of court, is illegal. A challenge to the legality of that sentence, if presented in a timely PCRA petition, cannot be waived. Our Court has repeatedly ruled that issues concerning legality of sentence are non-waivable and may be reviewed by our Court *sua sponte*. *See, e.g., Commonwealth v. Randal*, 837 A.2d 1211, 1214 (Pa.Super.2003)

(*en banc*); *Commonwealth v. Edrington,* 780 A.2d 721, 723 (Pa.Super.2001); *Commonwealth v. Archer,* 722 A.2d 203, 209 (Pa.Super.1998) (*en banc*); *Commonwealth v. Quinlan,* 433 Pa.Super. 111, 639 A.2d 1235, 1238 (1994). This is so even in the context of the PCRA, provided the Act's jurisdictional timeliness requirements are met. *See Commonwealth v. Fahy,* 558 Pa. 313, 737 A.2d 214 (1999) (legality of sentence issue, though nonwaivable, must nonetheless be filed within the PCRA's one-year filing period in order to confer jurisdiction).[3]

¶ 8 Instantly, as noted above, Berry filed his PCRA petition in a timely fashion, *i.e.,* within one year of the date his judgment of sentence became final. As such, Berry's legality of sentence claim retains its nonwaivable status and is cognizable under the Act.

¶ 9 Recognizing that a claim of illegal sentence cannot be waived, the majority reasons that, although the trial judge reneged on the promise he made to the defendant during the colloquy, the sentence is not "illegal" because the sentence is within the maximum term provided by statute. To the contrary, however, it is well settled that legality of sentence issues arise in a variety of contexts and are not simply limited to the duration of the maximum term imposed. *See, e.g., Commonwealth v. Mariani,* 869 A.2d 484 (Pa.Super.2005) (failure to determine restitution amount at time of sentencing produced illegal sentence); *Commonwealth v. Beck,* 848 A.2d 987 (Pa.Super.2004) (failure to grant credit for time served); *Davis, supra* (merger of offenses); *Edrington, supra* (failure to impose mandatory minimum sentence); *Hockenberry, supra* (minimum sentence exceeded one-half the maximum); *Quinlan, supra* (validity of probationary sentence not included in sentencing order). In fact, we have specifically and repeatedly ruled that a court's failure to impose sentence in accordance with the terms of a plea bargain constitutes an illegal sentence. *Commonwealth v. Williams,* 442 Pa.Super. 590, 660 A.2d 614, 618–619 (1995); *Commonwealth v. Daniels,* 440 Pa.Super. 615, 656 A.2d 539, 541 (1995); *Commonwealth v. Anderson,* 434 Pa.Super. 309, 643 A.2d 109, 111 (1994).

¶ 10 The majority attempts to endear its decision by properly including within its concept of illegality those sentences which are statutorily barred from imposition. Majority Opinion at 482, *citing Commonwealth v. Lipinski,* 841 A.2d 537 (Pa.Super.2004). This Court's definition

---

**3.** I recognize that the "non-waivable" protection assigned to legality of sentence claims has been scaled back via strict observance of the PCRA's jurisdictional time limitations. *Commonwealth v. Voss,* 838 A.2d 795, 800 (Pa.Super.2003), *citing Fahy, supra.* However, the "non-waivable" coat, otherwise firmly fastened to legality claims, sheds its significance *only* where the Act's jurisdictional requirements have not been met. *See Voss* at 800 (although legality of sentence claims must give way to Act's jurisdictional time limitations, "challenges to the legality of a sentence [can] be raised within one year of the date that a defendant's conviction becomes final" because "a year is 'sufficiently generous' to allow a defendant *to determine* if his or her sentence is illegal and to file a PCRA petition raising the issue") (citations omitted) (emphasis added). *See also Commonwealth v. Davis,* 760 A.2d 406, 409 (Pa.Super.2000) (legality of sentence claims presented in *timely PCRA petition* were cognizable even though appellant did not raise them on direct appeal) (emphasis added); *Commonwealth v. Hockenberry,* 455 Pa.Super. 626, 689 A.2d 283, 288 (1997) (issues relating to legality of sentence were cognizable and not waived where appellant failed to file post-sentence motions or direct appeal, but filed *timely post-conviction petition* nine months after imposition of sentence) (emphasis added). Thus, our case law demonstrates that a legality of sentence claim retains its non-waivable status so long as the Act's jurisdictional time limitations are satisfied.

of sentence illegality is broader than that, however, as reflected by our decision in *Commonwealth v. Newton,* 875 A.2d 1088 (2005). In *Newton,* the Court expressly noted that "[a] sentence may be deemed illegal for various reasons," including those *without statutory basis,* or "statutorily barred," as observed by the present majority. *Id.* at 1091. However, the *Newton* Court did not interpret the "statutorily barred" nuance exclusively, as evidenced by its holding, *i.e.,* that a claim of right to allocution—which is grounded *not* in statute, but in rule of court—nonetheless constitutes a claim of illegal sentence. *Id.* at 1091–92.[4]

¶ 11 Here, similarly, the sentence was entered in violation of Rules 121, 590, and the plea agreement. And just like a denial of allocution, the illegality in our case does not manifest itself in the seemingly benign terms of the sentence imposed, but in its indispensable *process.* Pursuant to extant case law, therefore, Berry's claim is a challenge to the legality of his sentence, and cannot be waived.

¶ 12 Indeed, it is difficult to imagine a scenario more manifestly unfair than this. First, the trial judge accepts a waiver of

counsel without advising the defendant of the maximum sentence permitted. Then, the trial judge induces the *pro se* defendant to plead guilty with a promise that his sentences on two counts will be concurrent or he can withdraw his plea. The trial judge then sentences him to consecutive time without advising the still-unrepresented defendant that he can withdraw his plea.[5] In short, a sentence begotten by such bait and switch tactics cannot be fairly considered legal. Accordingly, I am unable to subscribe to the majority's conclusion that the sentence imposed was legal, and the legality challenge waived therefore.

¶ 13 Turning to the merits of the claim, I believe that a trial judge is bound to follow a plea agreement stated on the record during the colloquy with the defendant.[6] In *Commonwealth v. Daniels, supra,* this Court reiterated the principle that a trial court is bound to comply with the terms of a plea agreement, and a recommendation of sentence is one such term. This Court stated:

> As a general proposition, sentencing is a matter vested in the sound discretion of the trial court and will remain undis-

---

**4.** Consequently, the *Newton* Court held that the rule-based allocution claim was not subject to waiver. *Id.* at 1092.

**5.** In *Williams, supra,* this Court determined that the sentencing court's failure to comply with the plea bargain constituted an illegal sentence, even though it was within statutory limits. Notably, Williams presented this claim for the first time in his *second* PCRA petition, requiring a strong *prima facie* showing that a miscarriage of justice occurred pursuant to *Commonwealth v. Lawson,* 519 Pa. 504, 549 A.2d 107 (1988). *Williams* at 618. Notwithstanding this heightened standard, the Court granted relief. In an opinion by Judge Hester, this Court stated, "Certainly, if the prosecutor failed to adhere to the terms of the plea agreement, this would provide grounds for PCRA relief as it would be a

miscarriage of justice for a person to relinquish cherished constitutional rights based on a promise that was not kept." *Id.* at 619. This principle applies *a fortiori* here, given that Berry is litigating his *first* PCRA petition, and the heightened standard of serial petitions does not apply.

**6.** I note at the outset that the Commonwealth does not contest the fact that the judge should have allowed Berry to withdraw his plea if timely asked. Relying on its waiver argument, the Commonwealth submits that it "has no position on the merits of this appeal and offers no argument on the issue before this Court," despite the fact that the trial judge indicated that the sentence was proper in his Rule 1925(a) opinion. (Commonwealth Brief on Reargument, at 6).

turbed on appeal, absent an abuse of that discretion.

Upon acceptance of a plea agreement, however, the trial court is bound to comply with the terms of that agreement. A sentence recommendation is among the "terms" of a plea bargain. Therefore, a negotiated sentence is binding on the court where the sentence is plainly set forth on the record, understood and agreed to by the parties and approved by the trial court.

656 A.2d at 543, *quoting Anderson*, 643 A.2d at 113 (internal citations omitted).

¶ 14 This is in accord with the procedures for plea agreements set forth in Pa.R.Crim.P. 590, which reads:

(B) Plea Agreements

(1) When counsel for both sides have arrived at a plea agreement, they shall state on the record in open court, in the presence of the defendant, the terms of the agreement . . . .

(2) The judge shall conduct a separate inquiry of the defendant on the record to determine whether the defendant understands and voluntarily accepts the terms of the plea agreement on which the guilty plea or plea of *nolo contendere* is based.

¶ 15 In this case, the trial judge clearly stated during the colloquy that if he would be unwilling to accept the recommendation of concurrent sentences, he would allow Berry to withdraw his guilty plea. Regardless of what was said ahead of time, on the record it was clear that this was a negotiated plea, not a plea where the negotiation was for "no recommendation" by the Commonwealth or "no objection" to concurrent time by the Commonwealth.

¶ 16 To make an unjust situation appallingly worse, Berry's waiver of counsel colloquy was grossly inadequate. Consequently, all subsequent proceedings—including Berry's guilty plea—were invalid. Indeed, the absence of counsel in this particular case heavily impacted Berry's ignorance of the fact that *he could have withdrawn his guilty plea.*

¶ 17 The waiver of counsel colloquy, in its entirety, consisted of the following:

THE COURT: Mr. Berry, before we proceed any further, I need to inquire that you understand that you have an absolute right to be represented by an attorney?

THE DEFENDANT: Yes.

THE COURT: And do you understand that if you can't afford an attorney that one would be appointed to represent you free of charge?

THE DEFENDANT: Yes.

THE COURT: And with that knowledge, do you still want to proceed on your own behalf?

THE DEFENDANT: Yes.

(N.T. 9/12/02, at 2–3).

¶ 18 The Court only advised Berry of the maximum possible sentences *after* Berry had waived his right to counsel.[7]

¶ 19 The United States Supreme Court stated in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (citations omitted):

When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional bene-

---

7. The problem was compounded because the Commonwealth first discussed the fact that the two counts carried mandatory 90–day sentences and the Commonwealth averred that it "w[ould] not object if the Court wants to impose a concurrent sentence to these two counts." (N.T. 9/12/02, at 2). Therefore, *at the time Berry waived his right to counsel,* he well could have thought he was likely facing 90 days in jail.

fits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.

422 U.S. at 835, 95 S.Ct. 2525.

¶ 20 The Pennsylvania Supreme Court similarly has stated, "The waiver of the right to counsel must appear from the record to be a knowing and intelligent decision made with full understanding of the consequences." *Commonwealth v. Szuchon,* 506 Pa. 228, 250, 484 A.2d 1365, 1377 (1984). In *Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), the United States Supreme Court provided guidance as to the minimum information to be disseminated to the defendant:

To be valid … waiver [of the right to counsel] must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

332 U.S. at 724, 68 S.Ct. 316. In accordance with these principles, the comment to Pa.R.Crim.P. 121, Waiver of Counsel, delineates the minimum requirements of a colloquy involving the waiver of counsel.[8]

¶ 21 In the present case, Berry was informed only of his right to counsel and to appointed counsel if indigent. Hence, his waiver of counsel was unquestionably invalid. *Commonwealth v. Payson,* 723 A.2d 695 (Pa.Super.1999); *see also Commonwealth v. Houtz,* 856 A.2d 119 (Pa.Super.2004) (where waiver of counsel colloquy did not delve into all mandated areas, it was unsound).

¶ 22 Since the waiver of counsel was defective, Berry's failure to raise the question of the validity of his guilty plea before the trial court cannot constitute waiver. In *Commonwealth v. Strachan,* 460 Pa. 407, 409, 333 A.2d 790, 791 (1975), the Court observed, "As a general rule, failure to raise an issue in a criminal proceeding does not constitute a waiver where the defendant is not represented by counsel in that proceeding." The exception to the rule is where a defendant knowingly and

---

**8.** Pa.R.Crim.P. 121(c) provides, "When the defendant seeks to waive the right to counsel after the preliminary hearing, the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary, and intelligent waiver of counsel." The comment states that at a minimum, the court should ensure that a waiver of counsel is knowing, voluntary, and intelligent, that the defendant understands: (1) that he has a right to be represented by counsel and the right to free counsel if indigent, (2) the nature of the charges against him and the elements of each of those charges, (3) the permissible range of sentences and fines, (4) that if he waives the right to counsel he will be bound by all the normal rules of procedure and that counsel would be familiar with these rules, (5) that there are possible defenses to these charges of which counsel might be aware, and if these defenses are not raised, they may be lost permanently, and, (6) that, in addition to defenses, the defendant has other rights that, if not timely asserted, may be lost permanently and that if errors occur and are not objected to or otherwise timely raised by the defendant, the objection to these errors may be lost permanently.

intelligently waived representation by counsel. *Id.* Since in this case, Berry did not knowingly and intelligently waive representation by counsel, his failure to raise the question of the propriety of his plea in the trial court in the first instance does not constitute waiver. *Commonwealth v. Monica,* 528 Pa. 266, 597 A.2d 600 (1991).

¶ 23 Berry was unrepresented when his plea was entered and the trial court informed him that he could withdraw it if the sentences were not imposed concurrently. Having not validly waived his right to counsel, Berry must be permitted to withdraw his guilty plea. *See Payson, supra.*

¶ 24 On top of this error, the court specifically told Berry that he could withdraw his guilty plea if the judge determined that he could not go along with a concurrent sentence. After imposing consecutive sentences that violated what Berry was told during the colloquy, it was clear that Berry was dissatisfied. However, perhaps because the judge forgot what he had told Berry when the plea was taken, he gave only the standard advice on appeal, *i.e.,* that he had to file post-sentence motions and could appeal from their denial, and that he had the right to counsel if he would fill out an application for a Public Defender at the prison. (N.T. 10/21/02, at 7).

¶ 25 Because it was necessary to file a motion to withdraw the guilty plea within ten days, we have no idea whether Berry in fact could obtain the proper forms by that time. He had received a state sentence, since the total was one to two years. We do not know when he was sent to the state prison. All we know from the record is that when Berry filed his PCRA petition on January 8, 2003, he still did not have

counsel and was asking for an attorney to represent him.[9]

¶ 26 To sum up what occurred in this case: a defendant waives his right to counsel through a defective colloquy; unrepresented thereafter, he is told by the Commonwealth that they would recommend concurrent sentences and told by the judge that if the judge thought the sentences would have to be consecutive, the defendant could withdraw his guilty plea; and the judge then sentences him to consecutive time, and the *pro se* defendant is not told he can withdraw his guilty plea. I believe that the egregious circumstances of this case warrant relief.

¶ 27 Finally, I believe that there is an additional point that merits emphasis, particularly in light of the circumstances of this case and, more generally, contemporary judicial practice. If a judge makes a mistake in the colloquy, it should not be the defendant who suffers after being misled by the judicial mistake. The trial judge stated at the PCRA hearing and in his Rule 1925(a) opinion that there was no plea agreement. However, when the trial judge declared this at the PCRA hearing, Berry's counsel stated that Berry would testify that he was informed both at the preliminary hearing and in later conversations with the District Attorney's office that there *was* a plea agreement. Despite this proffer, the trial judge refused to take testimony. At a minimum, therefore, this case should be remanded to determine if Berry *was* told he had a specific plea agreement.

¶ 28 There are a variety of options for plea agreements, as this Court has recognized:

9. Presumably if, at the time of sentencing, the trial judge had remembered that he had informed Berry that he could withdraw the plea if the sentences were not concurrent, he

would have so advised him and allowed Berry to go to trial, and this situation would not have occurred.

In an open plea agreement, there is an agreement as to the charges to be brought, but no agreement at all to restrict the prosecution's right to seek the maximum sentences applicable to those charges. At the other end of the negotiated plea agreement continuum, a plea agreement may specify not only the charges to be brought, but also the specific penalties to be imposed. In between these extremes there are various options, including an agreement to make no recommendation or, as here, an agreement to make a favorable but nonbinding recommendation. So long as the limits of the agreement are plainly set forth on the record, understood and agreed to by the parties, and approved by the trial court, we find no impediment in [*Commonwealth v. Bennett,* 512 Pa. 525, 517 A.2d 1248 (1986)] or Pa. R.Crim.P. 319(b) [now Rule 590(B)] to the offer, acceptance, performance or enforcement of such plea agreements. *Commonwealth v. Porreca,* 389 Pa.Super. 553, 567 A.2d 1044, 1047 (1989), *rev'd on other grounds,* 528 Pa. 46, 595 A.2d 23 (1991).[10]

¶ 29 Because of the variety of options, as in the instant case, lawyers and judges are often confused as to the exact intentions of the plea negotiations. Because the defendant is a layperson giving up his or her constitutional right to trial, it is imperative that the trial judge make sure that the exact terms of the negotiations are crystal clear and stated on the record. The defendant should not have to guess.

¶ 30 Unfortunately, guilty plea colloquies are often deficient in this and other respects. I certainly recognize the pressure on trial judges to move through cases quickly to alleviate crowded dockets. At the same time, it only takes a few minutes to ensure that the colloquy is complete and effective. Particularly when a state sentence is involved where a defendant might spend years in custody, not to speak of the cost of tens of thousands of dollars to taxpayers, it is not asking too much to require that colloquies be done properly.

¶ 31 For example, trial judges can refer to the Pennsylvania Benchbook for Criminal Proceedings, which is prepared under the auspices of the Pennsylvania Conference of State Trial Judges. *See generally Pennsylvania Benchbook for Criminal Proceedings* (3d ed.2001). The Benchbook has a comprehensive section on guilty pleas, with sample colloquies, written guilty plea forms, and other aids. *See id.,* Vol. 1, §§ 62.01–62.09. Its oral colloquy checklist clearly distinguishes between "open" pleas and pleas where the defendant can withdraw his or her plea if the judge refuses to accept the bargain. *Id.* § 62.02.

¶ 32 Another section dealing with written colloquies distinguishes between situations where there is no plea bargain, where there is an agreement to make no recommendation, and where there is a recommendation to drop certain charges. This section provides that the defendant can withdraw the plea if the judge does not go along with the plea bargain or agreement. *Id.* § 62.05.

¶ 33 The "normal" situation is one where a recommended sentence is stated on the record, and that exact sentence comprises

---

**10.** Our Supreme Court in *Porreca* reversed and remanded for a new colloquy because there was no inquiry into whether Porreca's guilty plea was induced by promises or threats that were not part of the plea agreement. 595 A.2d at 28. Therefore, the basis for reversal did not affect the validity of the above-quoted language describing the range of plea options. *See Commonwealth v. Dalberto,* 436 Pa.Super. 391, 648 A.2d 16, 20 & n. 4 (1994).

the negotiated plea. The defendant has a right to assume that the terms stated on the record are what he will receive, and if the judge does not go along with the bargain, the defendant will be able to withdraw the plea and go to trial. Unless it is clearly stated on the record, the judge cannot go beyond the sentence recommended by the Commonwealth without giving the defendant an opportunity to withdraw his or her guilty plea.

¶ 34 As noted, it is not placing an onerous burden on trial judges to utilize the standard form checklists, oral colloquies, and written colloquies with follow-up oral questions. It is not difficult to ensure that things such as the maximum allowable sentences, the elements of the crime, and the facts that the Commonwealth would present at trial are clearly stated on the record. It only takes a few additional minutes to be sure that everything is covered, a minute period considering all the time it takes to bring a defendant to the bar of the court, let alone the time the defendant may spend later in prison.

¶ 35 Likewise, it is not difficult to clearly state the nature of the plea negotiations if they are not going to be binding. Several cases show how it can be done succinctly.

¶ 36 The written colloquy form quoted in *Commonwealth v. McClendon*, 403 Pa.Super. 467, 589 A.2d 706 (1991) (*en banc*), read in relevant part:

> 6. I understand that the Judge is not bound by the terms of any plea bargain unless he chooses to accept it. The Judge will announce his decision at the conclusion of the plea colloquy which follows my signing this paper. If the Commonwealth agrees to make a sentencing recommendation on my behalf,

the Judge will not be bound by this recommendation and I understand that I will not be permitted to withdraw my guilty/no contest plea if this should occur.

*Id.* at 711.

¶ 37 The Assistant District Attorney [11] in *McClendon* followed-up with this on-the-record colloquy:

> And you understand that regardless of any recommendation or comment that we make in the plea bargain, that doesn't legally guarantee you of anything less than the maximum; that the Judge ... still can reject our recommendations and impose any sentence up to the maximum allowed by law?
>
> . . . . .
>
> What that would mean, at the time of sentencing we would come before this Court and indicate to the Judge that our position is, we have no objection to the sentences, that the two counts running at the same time. But as I said, that does not guarantee you that the Judge, in fact, is going to accept our position. He can still impose consecutive sentences, you understand that?

*Id.*

¶ 38 In the instant case, not only did the trial judge fail to make it clear that the recommended sentence did not preclude him from sentencing Berry to more time without giving him the option to withdraw his plea, but the judge actually stated the opposite. Therefore, it was not permissible for the trial judge to sentence Berry to a consecutive term without affording him the opportunity to withdraw his guilty plea.

¶ 39 But again, this Court has no business discussing the merits of this unfortu-

---

**11.** Although the Comment to Rule 590 advises that the trial judge conduct the guilty plea colloquy, it does not prohibit the Assistant District Attorney or defense counsel from conducting all or part of the colloquy.

nate case because Berry never validly waived his right to counsel under any standard. As a result, Berry's subsequent guilty plea proceedings were a nullity, and therefore, in my view, Berry should be afforded relief—*i.e.,* the relatively minimal relief of starting at square one—so that justice may fairly be had.

¶ 40 For the foregoing reasons, I respectfully dissent.